UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLACER COUNTY WATER AGENCY, | No.  2:25-cv-0483-TLN-SCR |
| Plaintiff, | |
| v. | <u>ORDER</u> |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | |
| Defendant. | |

Before the Court is Defendant's motion to compel further responses to various Requests for Production of Documents ("RFP").  ECF No. 19.  The motion is before the undersigned pursuant to Local Rule 302(b)(1).  The parties submitted a joint statement on June 17, 2026 (ECF No. 23), and the Court heard oral arguments on July 2, 2026.  The Court now issues the following order.

**INTRODUCTION**

This is an insurance dispute action concerning the aftermath of the Mosquito Fire of 2022. This case was initially filed in the Placer County Superior Court before removal to this Court on February 7, 2025.  ECF No. 1.  The complaint asserts that Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), which insures Plaintiff Placer County Water Agency ("PCWA"), failed to defend PCWA when it was named a cross-defendant in

1

*Placer County Water Agency v. Pacific Gas & Electric,* San Francisco County Superior Court, Case No. CJC-23-005272 ("*PCWA I*").[1] ECF No. 1-4 at 2-3.  Defendant National Union invoked a "Failure to Supply" exclusion in the insurance policy, which Plaintiff argues is inapplicable. ECF No. 1-4 at 3.  This exclusion was based on the fact that Defendant read cross-claimant PG&E's claims as being linked to PCWA's alleged failure to adequately supply electricity.  *Id.* at 7.  Plaintiff responded that because PCWA does not supply electricity, the damages at issue could not have arisen out of a purported failure to provide adequate electricity, which PG&E never alleged anyway.  *Id.*  The cross-complaint instead alleges that PCWA's failure to maintain and repair its equipment, particularly circuit breaker 32, was a "substantial cause of the Mosquito Fire."  *Id.* at 8.  Defendant responded that under the insurance policy, there was no difference between generating and supplying energy to the region for purposes of invoking the exclusion. *Id.*  Plaintiff disagrees and therefore seeks $2,000,000 for the defense fees and costs pertaining to the cross-complaint, plus interest and punitive damages, based on claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief.  *Id.* at 9-12.

Defendant propounded the RFPs at issue in late 2025, after which the parties met and conferred to narrow their scope.  ECF No. 23 at 2.  Plaintiff propounded initial responses on February 25, 2026, and supplemental responses on March 5 and 26, 2026.  *Id.*  In between each round of productions, Defendant informed Plaintiff of significant purported gaps like "the absence of underlying litigation documents, PCWA operational materials, documents supporting Plaintiff's allegations, mediation and settlement materials, relevant contracts and agreements, and billing invoices."  *Id.*  On April 29, 2026, Plaintiff affirmed that it continued to object to the RFPs discussed in this order.

## LEGAL STANDARD

As a general rule, discovery may be obtained regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  Courts can limit discovery when:

---

[1]  That case was originally filed in Placer County Superior Court before being coordinated with other state court actions concerning the Mosquito Fire.

**(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
**(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
**(iii)** the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

RFPs ask a party to "produce and permit the requesting party or its representative to inspect, copy, test, or sample … items in the responding party's possession, custody, or control[.]" Fed. R. Civ. P. 34(a)(1). For such purposes, documents are in the responding party's "control" if the party has "the legal right, authority, or practical ability to obtain the materials sought upon demand[,]" as from an affiliate corporation. *U.S. Intern. Trade Commission v. ASAT, Inc.*, 411 F.3d 245, 254 (D.C. Cir. 2005) (quoting *Camden Iron & Metal, Inc. v. Marubeni America Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991)); *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471-72 (S.D.N.Y. 2000).

Discoverable documents include "any designated documents or electronically stored information … stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form[.]" Fed. R. Civ. P. 34(a)(1)(A). In general, however, a party need not produce electronically stored information from sources that are "not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). If the responding party shows this to be the case, the court may still order discovery and set conditions thereof if the propounding party shows good cause, in light of the limitations in Rule 26(b)(2)(C). Fed. R. Civ. P. 26(b)(2)(B).

Any objections to a request must state whether any responsive materials were withheld as a result, and the propounding party must permit inspection of any responsive documents not withheld based on such objections. Fed. R. Civ. P. 34(a)(2)(C).

A propounding party may move for an order compelling a party to answer an interrogatory or produce documents responsive to an RFP if it fails to do so. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv).

////

3

**ANALYSIS**

**A. RFPs for all Discovery Documents in *PCWA I* (RFP Nos. 1-4)**

In broad terms, RFP Nos. 1-4 initially sought all filings, discovery requests and responses thereto, produced documents, and deposition transcripts from *PCWA I*. ECF No. 23 at 5-7. Defendant subsequently agreed to limit the scope of each RFP in an October 3, 2025 email. *Id.* For example, RFP No. 2's request for all documents filed in *PCWA I* was limited to unredacted versions of documents that are redacted on the public docket for the case. *Id.* at 6. RFP No. 4's request for deposition transcripts and exhibits was limited to a list of deponents, aside from individual plaintiffs in the action, and their affiliations or roles. *Id.* at 7.

Despite the narrowing in scope, Plaintiff continued to object that these RFPs are overbroad, burdensome, part of "a fishing expedition" unlikely to bolster any claim or defense, and would require productions of documents designated as Confidential pursuant to *PCWA I*'s Protective Order. *Id.* at 6-7. Plaintiff clarified at the hearing that although its production in response to other RFPs would necessarily have included documents responsive to these RFPs, it has not provided Defendant with a list of such responsive documents. Plaintiff further argued that without "targeted requests" based on a more concrete description of what Defendant hopes to gain from such production, it cannot determine the appropriate scope of production. *See* ECF No. 23 at 11.

The Court agrees with Plaintiff that it cannot order production to the extent that it would violate the Protective Order in *PCWA I*. This only applies to production PCWA received from other parties, however, and not to production that PCWA made in response to others' discovery requests. *See* ECF No. 23 at 11. Plaintiff has admitted to not producing all the documents it produced in *PCWA I*. Meanwhile, Defendant is amenable in the abstract to subpoenaing PG&E for its document production, or to having PCWA move for a modification of the Protective Order by the court in *PCWA I* to permit PCWA to produce other parties' documents in this action.[2]

////

---

[2] Such production would then be subject to the Protective Order in this action.

4

To the extent that PCWA was the party who produced documents in *PCWA I* that it has not produced here, it argues that some of this information is confidential as a matter of state law. ECF No. 23 at 10.  Some of the information, for example, concerns Critical Energy/Electric Infrastructure Information ("CEII"), the disclosure of which is strictly regulated to guard against any attacks on infrastructure.  *Id.* (citing 18 C.F.R. § 388.113).  As for the deponents in *PCWA I*, many of whom are living in the same community as those harmed by the Mosquito Fire, disclosure of their personal identifying information ("PII") could expose them to retaliation by those who blame them for the damage.  ECF No. 23 at 10.

The Court finds these concerns may be legitimate and believes that a partial disclosure of the information discussed at the hearing would permit Defendant to craft more precise discovery requests for Plaintiff or better justify its subpoena to PG&E.  Accordingly, PCWA shall produce (1) all discovery requests it propounded on other parties in *PCWA I*, (2) all discovery requests that PG&E propounded on PCWA, and (3) all written responses thereto (i.e., all written responses to discovery it propounded and all of its own written responses), except it may redact any CEII contained within those responses.  As to RFP No. 4, Plaintiff shall produce a list of the deponents, which may exclude individual *PCWA I* plaintiffs pursuant to Defendants' October 2025 modification.  Following Defendant's review of this production, the parties shall meet and confer as to whether additional production—for example, documents produced in response to RFPs in *PCWA I*—is appropriate to support specific theories of liability or affirmative defenses.  These partial disclosures shall be made within fourteen days of this order.  The parties are informed that any further dispute in relation to the disputed RFPs may be set through an informal discovery conference ("IDC") before the undersigned.

**B.  Response to the PCWA I Cross-Complaint (RFP No. 9)**

RFP No. 9 asks for "[a]ll DOCUMENTS and COMMUNICATIONS, including internal and external, RELATING TO the allegations" in select paragraphs of the April 24, 2024 cross-complaint.  ECF No. 23 at 11-12.  Aside from repeating objections pertaining to the scope of the RFP and its implications for the *PCWA I* Protective Order (*see supra* A), Plaintiff argued that these documents were privileged, concerned documents Defendant should have obtained before

5

denying coverage, and requires Plaintiff to guess at PG&E's factual basis for each allegation as issue. ECF No. 23 at 11-12. Plaintiff further noted that the RFP cited a version of the cross-complaint that was no longer operative as of the propoundment of the RFPs.

None of these justified Plaintiff's complete lack of production. Although the Complaint in this action asserts that the *PCWA I* cross-complaint was amended on July 26, 2024, it also asserts that by then Defendant had invoked the Failure to Supply exclusion in two separate letters. ECF No. 1-4 at 6-7. Whether the cross claims in fact fell under this exclusion at the time is separate from whether Defendant performed its due diligence in so deciding. Both are relevant to this action.

As to the nature of PG&E's allegations, Plaintiff argued at the hearing that many of these were unintelligible, conclusory, or generally reflected factual disputes between the parties. *See* ECF No. 23 at 15 (noting the work required to respond to the RFP as to any one allegation in the *PCWA I* cross-complaint "even when Plaintiff maintains there is no evidentiary basis for the underlying allegations[.]") In so arguing, Plaintiff seems to believe that by responding to this RFP, it would be conceding the truth of these allegations. However, the term "relating to" implicates documents that refute a particular point as well as those that support it. Plaintiff would satisfy its duty to respond to the RFP by producing documents that contradict the allegations in the cross-complaint, where intelligible. If, alternatively, Plaintiff believes that any specific allegation is either too broad and conclusory to enable such a response or is so divorced from reality as to not have any relevant documents, it may stand on that argument as to those allegations only.

Plaintiff is hereby ordered to provide a supplemental response and produce documents either supporting or refuting the allegations in paragraphs 6-13 and 34-53 of PG&E's original *PCWA I* cross-complaint, or alternatively to articulate why this is impossible as to specific allegations. This supplemental response and additional production shall be made within 28 days of this order.

////

////

6

### C. The Word "Supply" (RFP No. 10)

RFP No. 10 seeks all documents and communications that used the word "supply" and variations thereof in connection with the Middle Fork American River Project.  ECF No. 23 at 12.  This is the one RFP for which Plaintiff's objection as to the scope has merit.  Between discovery responses and the hearing, Plaintiff argued that as a water county agency specializing in hydroelectricity, most of its documents would contain some variation of the word "supply[.]"  *See* ECF No. 23 at 12, 15-16.  Both to reduce the burden on Plaintiff and to make any production more useful and targeted for Defendant, it is clear that further limitations on this RFP are necessary.

The parties are ordered to meet and confer on how they can narrow the scope of documents responsive to RFP No. 10.  Options include, but are not limited to, identifying specific PCWA custodians of records who must search for documents within specific archives, or adding keywords that documents must include aside from "supply" in order to be responsive.  As with RFP Nos. 1-4 (*see supra* A), the parties are invited to ask for further guidance through IDC if necessary.

### D. PCWA's Cross-Complaint Allegation (RFP No. 40)

Plaintiff cross-complaint in *PCWA I*, filed December 20, 2022, asserts that "[o]n September 6, 2022, PCWA's critical supply of clean energy to Placer County residents ceased when a massive wildfire, dubbed the Mosquito Fire, erupted in Placer County, causing devastating harm to PCWA – and consequently many Placer County residents."  ECF No. 23-1 at 3. RFP No 40 asks for any documents relating to this allegation.  ECF No. 23 at 16.  Without producing any documents, Plaintiff eventually responded that this fire "caused damage to transmission facilities owned by PG&E" and made it impossible "to transmit energy generated by PCWA into the CAISO-controlled transmission system[.]"  *Id.*

Plaintiff argued at the hearing that this is in effect a Request for Admission of the allegation in that paragraph of the cross-complaint, insofar as Defendant now asks Plaintiff to support it.  As discussed above, however, "relating to" is not limited to documents affirming the validity of the statement.  *See supra* B.  Regardless, it is not clear why Plaintiff should not have to

7

produce documents to substantiate its own allegation in *PCWA I*.

Both in the joint statement and at the hearing, Plaintiff argues that it has produced documents confirming its inability "to participate in energy markets as a result of the Mosquito Fire [.]" RFP No. 23 at 18. It also explained, however, that this production was in response to other RFPs with no indication that these documents were also responsive to RFP No. 40. Defendant should not be required to guess at the factual and evidentiary overlap between different discovery requests and responses.

Plaintiff is ordered to provide Defendant with a list of all documents produced thus far, by Bates stamp number, that are also responsive to RFP No. 40. The parties are subsequently ordered to meet and confer as to whether further production under this RFP is necessary, including but not limited to a privilege log to justify any withheld documents or redactions.

### E. Privilege as to Invoices (RFP No. 41)

Finally, Defendant contends that Plaintiff has over-redacted attorneys' fees invoices from Buchalter, its litigation counsel in *PCWA I*. Plaintiff seeks compensation for those fees as damages in the present action. An example of a heavily-redacted invoice from Buchalter to Plaintiff is attached to the Joint Statement. ECF No. 23-6 (Attachment F). The information Buchalter included in that and other invoices may be protected under the attorney-client privilege. "To the extent that [such] billing information is conveyed 'for the purpose of legal representation' – perhaps to inform the client of the nature or amount of work occurring in connection with a pending legal issue – such information lies in the heartland of the attorney-client privilege." *AIG Specialty Ins. Co. v. TRC Companies, Inc.*, No. CV 23-6413-FLA (EX), 2024 WL 5365052, at *1 (C.D. Cal. Dec. 11, 2024) (citation omitted). There is inconsistency in the case law as to whether a plaintiff seeking to recover attorneys' fees in a coverage dispute makes an implied waiver of attorney-client privilege over relevant invoices or merely places "in issue" such records, without effecting a waiver. *Contrast id*. (finding no waiver but finding records may be placed "in issue"), with *Byers v. Superior Ct.*, 101 Cal. App. 5th 1003, 1013 (2024) (finding implied waiver).

Regardless of whether there has been a waiver of the privilege, the redactions to ECF No. 23-6 are excessive. In their current form, they prevent Defendant from determining whether "the

8

work performed … falls within potentially recoverable versus non-recoverable charges," and whether the charges "were reasonable and necessary." *Moore v. Zurich Am. Ins. Co.*, No. CV 16-2466-AB (PLA), 2017 WL 10605923, at *4 (C.D. Cal. Feb. 28, 2017) (citation omitted); *see also Luna v. Sears Life Ins.*, No. 06cv2653 DMS (CAB), 2008 WL 2484596, at *1 (S.D. Cal. Jan. 11, 2008) ("[p]laintiff cannot request attorneys' fees and simultaneously argue the information supporting the claim is protected") (citation omitted).  Should Plaintiff wish to maintain its contention that the Buchalter invoices contain privileged information, the Court will require Plaintiff to (1) review all responsive billing invoices, (2) reproduce such invoices in a minimally redacted form, such that only information that is privileged is redacted, and (3) produce a privilege log that includes, beyond the conventional components of a privilege log, as to each redacted time entry (a) a notation as to whether such entry involved time spent on PG&E's counter-claim against PCWA and (b) the general nature of the work done under such entry. Within 28 days of the date of this order, Plaintiff shall make a supplemental response and production consistent with this portion of the order.

IT is SO ORDERED.

DATED: July 8, 2026

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE